FILED

2007 Jan-16  PM 04:38
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **FARMERS INSURANCE EXCHANGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Civil Action No. CV-06-S-0404-NE** |
| **FREDERICK WRIGHT; ANNA BURLESON; FRANCEY KNALLS; CHASE KNALLS; CHAZZ KNALLS; and EDITH WARREN;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Farmers Insurance Exchange, a California corporation, brought this declaratory judgment action against its insured, Frederick Wright, an Alabama citizen, and several other Alabama residents who were injured (financially or physically) as a result of a car accident in Madison County, Alabama, in which Wright was involved.[1] More than ten months after receiving service of process *via* certified mail,[2] two defendants — Wright and Edith Warren — have yet to respond to the allegations of

---

[1] Doc. no. 1 (Complaint). ***Nota bene:*** the complaint also names "Fictitious Defendant A," and plaintiff has repeatedly made reference to this nonexistent defendant in motions filed with this court. *See*, *e.g.*, *id*. There being no fictitious party practice in federal court, however, *see New v. Sports & Recreation*, *Inc.*, 114 F.3d 1092, 1094 n.1  (11th Cir. 1997), the court will order this defendant summarily dismissed in the order that accompanies this memorandum opinion.

[2] *See* doc. no. 9 (Green Card Showing Service Upon Frederick Wright); doc. no. 14 (Green Card Showing Service Upon Edith Warren).

the complaint or otherwise appear.  The Clerk of the Court has accordingly entered default of record against Frederick Wright and Edith Warren,[3] *see* Fed. R. Civ. P. 55(a), and plaintiff's motions for entry of default judgment against each of them are pending.[4]  In the meantime, plaintiff also has filed a motion for summary judgment against *all* defendants.[5]

The court initially postponed ruling on the motions for default judgments because the remaining defendants, in responding to plaintiff's motion for summary judgment, argue that this case is not "ripe" for a decision.  *See*, *e.g.*, *AVEMCO Insurance Company v. Pond*, No. 94-073-B, 1994 WL 516449, at * 1 n.1 (D. N.H. Sept. 20, 1994) ("An allegation that a complaint is not ripe challenges the court's subject matter jurisdiction.").  Below, the court considers the issue of ripeness and concludes that there is no barrier to rendering judgment.  Accordingly, the motions for default judgments against Wright and Warren are due to be granted.  That, of course, leaves plaintiff's motion for summary judgment, which also is due to be granted.

## PART ONE

---

[3] Doc. no. 23 (Clerk's Entry of Default as to Frederick Wright); doc. no. 22 (Clerk's Entry of Default as to Edith Warren).

[4] Doc. no. 25 (Motion for Default Judgment as to Frederick Wright); doc. no. 26 (Motion for Default Judgment as to Edith Warren).

[5] Doc. no. 29 (Plaintiff's Motion for Summary Judgment).

*Summary of Relevant Facts*

This is a relatively straightforward insurance coverage dispute. At all times pertinent to this lawsuit, plaintiff, Farmers Insurance Exchange, provided automobile insurance coverage to defendant Frederick Wright.[6] On December 13, 2004, Wright "was involved in an automobile accident with a vehicle driven by [defendant] Anna Burleson[,] in which [defendants] Francey Knalls, Chase Knalls, [and] Chazz Knalls . . . were passengers."[7] The vehicle driven by Burleson — which was actually owned by defendant Edith Warren — was reportedly totaled.[8] Although there is nothing in the record indicating who was at fault in the accident, Wright evidently pled guilty to the related charge of leaving the scene of the accident.[9]

Fairly soon after the collision in question, Wright began receiving written correspondence from representatives of those involved. Specifically, Wright received a letter dated January 4, 2005, from an attorney by the name of C.E. Carmichael.[10] Carmichael disclosed that he represented Burleson and the Knalls, who were injured

---

[6] Doc. no. 30 (Plaintiff's Brief in Support of Summary Judgment), Statement of Undisputed Facts, ¶ 3. In responding to the motion for summary judgment, Burleson and the Knalls have accepted as true all facts contained within plaintiff's recitation of undisputed facts. *See* doc. no. 36 (Defendants' Brief in Opposition to Summary Judgment), p. 1.

[7] Doc. no. 30, Statement of Undisputed Facts, ¶ 1.

[8] *Id.* at ¶ 12.

[9] *Id*. at ¶ 2.

[10] *Id*. at ¶¶ 9, 12.

in the accident, and asked that Wright pass the letter along to his insurance company.[11]  Additionally, Carmichael stated that "if I do not hear from you or your insurance carrier within a reasonable length of time, I will have no alternative but to file suit."[12]  Not long thereafter, in February 2005, Wright received two other letters from Bridgett Wilson of Nationwide Insurance Company, both of which indicated that Nationwide had tendered payment to Edith Warren for the damage to her vehicle, and now intended to seek reimbursement from Wright *via* a subrogation agreement.[13]  In both letters, Nationwide threatened to file suit if Wright did not respond within fifteen days.[14]

Apparently neither Carmichael nor Nationwide received a response from Wright, and Wright failed to pass the correspondence along to plaintiff, Wright's automobile insurance carrier.  An attorney for Nationwide wrote another letter to Wright on April 26, 2005, this time advising that his failure to communicate concerning the subrogation claim could result in the institution of legal action within ten days.[15]  On May 9, 2005, Carmichael wrote another letter advising Wright that "you failed to contact my office so I am now preparing to file the lawsuit with the

---

[11] *Id*. at ¶ 12.

[12] *Id*.

[13] *Id*. at ¶ 14.

[14] Doc. no. 30, Ex. 4 (Letters from Bridgett Wilson).

[15] *Id*. at Ex. 3-B (Letter from J. Michael Crouch).

court."[16]

It was not until June 21, 2005 that Wright finally notified plaintiff of the December 13, 2004 collision, and provided copies of the above-mentioned letters.[17] Approximately one month later, one of plaintiff's representatives mailed Wright a "reservation of rights" letter.[18] In that correspondence, plaintiff informed Wright that he had "failed to comply with [his] duties as outlined in [the automobile insurance] policy."[19] Specifically, the letter quoted the following provisions contained within the insurance policy issued to Wright:

> **WHAT TO DO IN CASE OF AN ACCIDENT**
>
> **Notice**
>
> In the event of an accident, or loss, notice *must* be given to us or our agent promptly. Your failure to give us prompt notice as required will not invalidate your claim *if you show that it was not reasonably possible to do so and you notify us as soon as it is reasonably possible.* The notice must give the time, place and circumstances of the accident, or loss, including the names and addresses of injured persons and witnesses.
>
> **Other Duties**
>
> A person claiming any coverage of this policy must also:

---

[16] *Id*. at Statement of Undisputed Facts, ¶ 13.

[17] *Id*. at ¶ 4.

[18] *Id*. at ¶ 6.

[19] *Id*. at Ex. 3-C (Reservation of Rights Letter).

1.    Cooperate with us and assist us in any matter concerning a claim or suit.

2.    Send us promptly any legal papers received relating to any claim or suit.[20]

Another portion of the policy, not quoted in the letter, but located under the heading "Conditions," provides that "[w]e may not be sued unless there is full compliance with all the terms of this policy."[21]

In August 2005, Wright consented to a recorded interview with one of plaintiff's agents.[22]  During the discussion, Wright was asked why he did not timely communicate with plaintiff regarding the accident and coverage issues.[23]  His only justification was that "there was a misunderstanding on my part" — that is, he erroneously thought his lawyer had told him to refrain from informing the insurance company until further notice.[24]  Wright added, "I was suppose[d] to actually tell ya'll [*sic*] shortly after [my court date for leaving the scene of an accident]," but failed to do so.[25]  Asked whether he had read his insurance policy — containing the notice

---

[20] *Id*. at Statement of Undisputed Facts, ¶ 16 (italics supplied, bold face emphasis and all caps in original).

[21] Doc. no. 30, Ex. 1 (Insurance Policy), p. 13.

[22] *Id*. at Statement of Undisputed Facts, ¶ 7.

[23] *Id*. at ¶ 8.

[24] *Id*.

[25] *Id*. at Ex. 3-A (Recorded Interview), p. 3.

-6-

requirements listed above — Wright responded that he had.[26]

Six months later, in February 2006, plaintiff brought suit in this court to determine its obligations under the contract of automobile insurance.[27] *See* 28 U.S.C. § 2201 ("In the case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").  The argument throughout this litigation has been that Wright's failure to comply with the notice obligations imposed by the insurance policy relieves plaintiff of the duty to provide coverage under that policy.

## PART TWO

### *Ripeness*

In responding to plaintiff's motion for summary judgment, the answering defendants contend, *inter alia*, that this action may not be "ripe" for a decision, given that no lawsuits have been filed by the victims of the accident.[28]  The court disagrees.

"[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and never may occur, from those cases that are appropriate for federal court action." Erwin Chemerinsky, *Federal Jurisdiction* § 2.4,

---

[26] *Id*. at Statement of Undisputed Facts, ¶ 10.

[27] Doc. no. 1, ¶ 23.

[28] Doc. no. 36, p. 6.

p. 114 (4th ed. 2003). "Ripeness is said to reflect both constitutional and prudential considerations." *Id*. at p. 115. Declaratory judgment actions commonly present ripeness questions; indeed, the Declaratory Judgment Act itself focuses courts on the issue, beginning as it does with the caveat "[i]n a case of *actual controversy*." 28 U.S.C. § 2201(a) (emphasis supplied). "In other words, federal courts can issue declaratory judgments if there is an actual dispute between adverse litigants and if there is a substantial likelihood that the favorable federal court decision will bring about some change." Chemerinsky, *supra*, at § 2.2, p. 55. "[T]he question in each case is whether the facts alleged, under the circumstances, show that there is a *substantial controversy*, between parties having adverse legal interests, of sufficient *immediacy* and *reality* to warrant the issuance of a declaratory judgment." *Maryland Casualty Company v. Pacific Coal & Oil Company*, 312 U.S. 270, 273 (1941) (emphasis supplied).

Although some district judges decline, on ripeness grounds, to hear insurance coverage disputes that have yet to result in the filing of third-party claims, this is not an inexorable conclusion. *See* Chemerinsky, *supra*, at § 2.4, p. 116 (observing that "federal courts have a great deal of discretion in determining whether a case is ripe"). In cases like the one at hand, where attorneys and other representatives of would-be claimants have made direct demands for payment, as well as threats of imminent

lawsuits, to the insured, the insurer certainly has an interest in promptly resolving the coverage issue prior to the institution of third-party litigation.  *Accord* 10 *Federal Procedure, Lawyers' Edition* § 23:26 (2006) ("It is much more sensible to permit resolution of coverage issues when the dispute first arises rather than to require all parties to endure unnecessary uncertainty and expense until a third party complaint has been filed.  Where settlement demand has been made, the presence or absence of coverage is critical for all parties in determining how to proceed, and a disputed coverage issue is a sufficiently live controversy to make exercising jurisdiction appropriate under 28 U.S.C. § 2201.").

Moreover, the facts presented in this case make plain that the only way to make the threat of litigation go away is to render a decision on the coverage issue.  *Cf. Aetna Casualty & Surety Company v. General Dynamics Corporation*, 868 F.2d 707, 711 (8th Cir. 1992) (agreeing with Aetna "that since General Dynamics had made a clear demand for payment of defense and indemnity costs with respect to each of the four sites [at issue] and because Aetna disputed those demands, there is a live justiciable controversy between the parties sufficient to invoke the jurisdiction of the district court"); *Bank of America National Trust & Savings Association v. Private Trust Corporation*, No. 97-4573, 1998 WL 230991, at * 3 (S.D.N.Y. May 6, 1998) ("Bank of America has easily satisfied these [ripeness] standards.  It has shown that

an identifiable entity, Morgan, has asserted claims in writing against it for the amount of PDI due on the Obligation.  Even if no lawsuit has yet been filed on that claim, it plainly represents 'a real and immediate controversy[.]'"); *AVEMCO Insurance Company v. Pond*, No. 94-073-B, 1994 WL 516449, at * 2 (D. N.H. Sept. 20, 1994) ("While I acknowledge that a declaratory judgment action to determine the scope of liability insurance coverage ordinarily will not be ripe until the underlying action is filed, I do not agree with defendants that this must always be so.  AVEMCO's amended petition alleges that McGrath's estate has made a demand against the defendants which the estate intends to pursue unless a settlement can be reached before suit is filed.  If the parties ignore that demand, they may well lose an important opportunity to settle a potentially costly claim at a discount.").

Finally, unlike some liability insurance cases, where the existence of a coverage obligation is dependent upon the nature of the underlying claimant's allegation, the question presented in this action concerns the existence *vel non* of coverage for an automobile accident, regardless of whether the claim is for "negligence," "wantonness," "trespass," *et cetera*.  Thus, any judgment by this court is not likely to be rendered moot by the third-party claimants' subsequent artful pleading.  *See Pond*, 1994 WL 516449, at * 2.  With all of that in mind, the court is satisfied that this action presents a justiciable controversy.

## PART THREE

*Motions for Default Judgments*

As explained above, arguably the most important (if least interested) defendant in this action — Frederick Wright, the insured — has failed to respond to the properly served summons and complaint.[29]  The same goes for Edith Warren, the owner of the totaled vehicle.[30]  These failures have resulted in the Clerk's entry of default as to both Wright and Warren,[31] and plaintiff's motions for default judgments.[32]  It is well-settled that, upon entry of default, a defendant is deemed to have admitted the well-pleaded allegations of fact set forth in a plaintiff's complaint.  *See*, *e.g.*, *Nishimatsu Construction Company v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[33]  Notwithstanding that general principle, "a defendant's default does not in itself warrant the court in entering a default judgment.  There must be a sufficient basis in the pleadings for the judgment entered."  *Id.* at 1206.

Because of the odd procedural posture of this case, the court has actually seen not only the allegations in plaintiff's pleadings, but also evidence presented in

---

[29] Doc. no. 9.

[30] Doc. no. 14.

[31] Doc. no. 22; doc. no. 23.

[32] Doc. no. 25; doc. no. 26.

[33] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

support of summary judgment.  Wright's default standing alone leads to the admission that he was involved in an accident with the other named defendants in this action.[34]  Additionally, Wright is deemed to admit that his policy contained the notice provision recited above;[35] that, within a short time after his accident, he received at least five letters from representatives of interested third-parties requesting that he turn the matter over to his insurance company;[36] and that, nonetheless, he failed to do so until almost six months after the date of the accident.[37]  Warren admits that she is the owner of the vehicle that was damaged, and that her insurer has a right of subrogation for monies it paid to compensate her for that loss.[38]  The evidence submitted by plaintiff in support of summary judgment confirms these admissions.  Plaintiff has produced the insurance policy, complete with the notice provision relied upon, as well as letters and other information confirming the subrogation interest and the lack of any legitimate reason for Wright's failure to inform plaintiff of the automobile accident in question.

The only remaining issue, then, is a legal one.  That is, do the admitted facts form the basis for a lawful judgment?  *See Nishimatsu*, 515 F.2d at 1206 ("The

---

[34] Doc. no. 1, ¶¶ 13-14.

[35] *Id*. at ¶ 20.

[36] *Id*. at ¶¶ 14-17.

[37] *Id*. at ¶ 18.

[38] *Id*. at ¶ 16.

[defaulting] defendant is not held to . . . admit conclusions of law.").  The well-settled rule in the State of Alabama is that:

> [where] notice of the accident and forwarding of any demand, notice, summons or other process are *specifically made a condition precedent to any action against the insurer*, the failure to give a reasonably timely notice of the accident or of the receipt of any demand, notice, summons or other process will release the insurer from the obligations imposed by the contract, although no prejudice may have resulted.

*American Fire & Casualty Company v. Tankersley*, 116 So. 2d 579, 582 (Ala. 1959) (emphasis supplied).  "Whether a provision in a contract is a condition precedent depends, *not upon formal words*, but upon the intent of the parties, to be deduced from the whole instrument." *Fidelity & Casualty Company of New York v. DeLoach*, 195 So. 2d 789, 793 (Ala. 1967) (emphasis supplied).  Obviously, the clearest example of a requirement that serves as a condition precedent to some reciprocal duty is one that is explicitly labeled as one in the contract.  *See id*.  On the other hand, the court in *DeLoach* made plain that no specific language is required.

While the notice provision in this case is not denominated a condition precedent, or indeed even listed under the "Conditions" section of the policy, it was without doubt intended as such.  At the outset, it is notable that the notice provision is one of the very first paragraphs of the policy, and is in fact *the* first paragraph under

-13-

the heading "WHAT TO DO IN CASE OF AN ACCIDENT."[39]  In a long policy full of legalese, the placement of the plain-worded notice provision toward the beginning is a sign of its importance.  Moreover, three aspects of the notice provision indicate that the failure to comply is not inconsequential.

First, the mandatory injunction "must" is employed.  Given the context, it is only reasonable to understand this language as imposing a condition on the insurer's duty to provide coverage.  Second, even if that commanding verb alone does not telegraph the nature of the duty, the policy explains that "[y]our failure to give us prompt notice as required *will not invalidate* your claim *if* you show that it was not reasonably possible to do so and you notify us as soon as it is reasonably possible."[40] Through this proviso, the policy drafters made clear that invalidation of a claim is a very real possibility if the exceptions listed in the notice paragraph are not met.  Only a condition precedent could have this effect.  Third, under the "Conditions" section of the policy, this disclaimer appears:  "[w]e may not be sued unless there is full compliance with all the terms of this policy."[41]  Without explicitly so stating, the Supreme Court of Alabama has in the past apparently viewed these sorts of catch-all provisions as sufficient to render preceding notice clauses conditions precedent.  *See*,

---

[39] Doc. no. 30, Ex. 1, p. 4 (all caps in original).

[40] *Id*. (emphasis supplied).

[41] *Id*. at p. 13.

*e.g.*, *Southern Guaranty Insurance Company v. Thomas*, 334 So. 2d 879, 882 (Ala. 1976); *Tankersley*, 116 So. 2d at 580.

Having concluded that the notice requirement was a condition precedent to the insurer's duty to provide coverage, the next and final step is ascertaining whether the notice was provided within a reasonable time. *See Thomas*, 334 So. 2d at 882 ("The terms 'as soon as practicable' and 'immediately' . . . have been generally construed to mean that notice must be given 'within a reasonable time' in view of all the facts and circumstances of the case."). In situations like this, where there is no dispute as to the material facts, the question of reasonableness is one for the court. *Id*. at 882-883. As a matter of law, Wright has admitted waiting until nearly six months after his accident to inform his insurer. Even if he were here to defend his tardiness on the record, there would be little excuse. His recorded conversation indicates that he knew of the necessity of providing notice — having received multiple letters requesting that he contact the insurer, and having read his policy upon receipt. Given all of this, the case is indistinguishable in virtually every respect from *Thomas*. *See generally id*. at 884 ("In the present case, we are confronted with a [n]amed insured who not only had possession of the policy and ample opportunity to read it but also was advised by the injured party's attorney to notify his homeowner's insurance carrier. . . . This excuse is clearly unreasonable and affords no basis for submitting the reasonableness

of the delay to the jury.").

The motion for default declaratory judgment as to Wright will, therefore, be granted. Because there is no substantive claim against Warren — she is merely a party to the lawsuit because of her interest in the outcome of the declaratory judgment — the motion for a default declaratory judgment as to her will also be granted.

**PART FOUR**

*Motion for Summary Judgment*

Although the resolution of the motions for default judgments does not, *ipso facto*, terminate plaintiff's motion for summary judgment against all defendants, the above reasoning is equally applicable here. The answering defendants, in responding to the summary judgment petition, have explicitly admitted all facts alleged therein.[42] Those facts also form the basis for the court's conclusion, *supra*, that a legally cognizable claim has been pled against Wright. Additionally, the court has already rejected the only defenses offered by these defendants: *i.e.*, ripeness, and the argument that compliance with the notice provision was not a condition precedent to the insurer's reciprocal coverage obligation. Therefore, summary judgment in plaintiff's favor is proper.

**Conclusion**

---

[42] *See* doc. no. 36, p. 1.

In accordance with the foregoing, plaintiff's motions for default declaratory judgments against Frederick Wright and Edith Warren will be granted.  Plaintiff's motion for summary judgment also will be granted.  Finally, the fictitious defendants named in the complaint will be summarily dismissed, and the case will be closed.  An appropriate order will be entered contemporaneously herewith.

DONE this 16th day of January, 2007.

_____
United States District Judge